[Cite as *State v. Sanders*, 2020-Ohio-3506.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 2-19-13

v.

JEFFAWN ERIC-MONTEL SANDERS,

                                      **O P I N I O N**

    DEFENDANT-APPELLANT.

---

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2019 CR 0176

Judgment Affirmed

Date of Decision:   June 29, 2020

---

APPEARANCES:

    *Kimberlyn Seccuro* **for Appellant**

    *Edwin A. Pierce and Joshua A. Muhlenkamp* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant, Jeffawn Sanders ("Sanders"), brings this appeal from the October 17, 2019 judgment of the Auglaize County Common Pleas Court sentencing him to five years in prison after Sanders entered a plea of guilty to, and was convicted of, Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. On appeal, Sanders argues that his sentence was contrary to law, that he received ineffective assistance of counsel at the sentencing hearing, and that the State violated the plea agreement.

*Background*

{¶2} Sanders was born HIV positive. On July 9, 2019, Sanders was staying in a friend's living room on the couch. Sanders' friend had a twelve year old daughter and the daughter was sleeping on the living room floor because the living room had a fan and it was cooler than in her bedroom. In the early morning hours of July 9, 2019, Sanders, who had been asleep, awakened from a sexual dream and saw the victim on the floor. He positioned himself behind her, pulled her shorts and underwear to the side, and rubbed his erect penis against the victim's vagina.[1] Sanders maintained that he still had his underwear on, and that if there was any penetration it was only slight, with his penis still inside of his shorts. The victim stated that penetration was not made.

---

[1] Sanders was adamant that he did not remove the victim's shorts or underwear.

{¶3} The victim told her mother of the incident, and the mother's boyfriend got into a physical altercation with Sanders wherein Sanders was severely injured. Sanders was taken to the hospital, where he was interviewed by the police.

{¶4} On July 18, 2019, Sanders was indicted for Rape of a person less than thirteen years of age in violation of R.C. 2907.02(A)(1), a felony of the first degree, Attempted Rape in violation of R.C. 2923.02(A) and 2907.02(A)(1), a felony of the second degree, Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree, Attempted Felonious Assault in violation of R.C. 2923.02(A) and R.C. 2903.11(B)(3), a felony of the third degree, and Felonious Assault in violation of R.C. 2903.11(B)(3), a felony of the second degree. Sanders originally entered pleas of not guilty to the charges.

{¶5} On August 22, 2019, Sanders filed a suppression motion seeking to prevent the State from using the statements he had made to the police. Sanders contended that he was interrogated "while he was undergoing treatment in a medical trauma room at the hospital for injuries sustained as the result of having been brutally beaten by hammer and scissors earlier that morning by friends and family of the alleged victim[.]" (Doc. No. 29). Sanders argued that at the time he was questioned by police he was not able to fully understand the significance of his rights.

{**¶6**} On September 16, 2019, Sanders entered into a written negotiated plea agreement wherein he agreed to plead guilty to Gross Sexual Imposition as indicted, and in exchange the State agreed to dismiss the remaining counts against him, including the most serious counts. It was also agreed that the State would request a Victim Impact Statement, and that Sanders would withdraw all pending motions.

{**¶7**} A change-of-plea hearing was held that same day. Sanders was advised of his rights pursuant to Crim.R. 11, and the trial court determined that Sanders was entering a knowing, voluntary, and intelligent guilty plea. The State provided a factual basis for the charges and then Sanders was found guilty of Gross Sexual Imposition as charged. The remaining counts were dismissed, and a presentence investigation ("PSI") was ordered.

{**¶8**} On October 16, 2019, the matter proceeded to sentencing and Sanders was ordered to serve sixty months in prison. A judgment entry memorializing his sentence was filed the next day. It is from this judgment that Sanders appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Mr. Sanders' sentence is both unsupported by competent, credible evidence in the record and contrary to law.**

**Assignment of Error No. 2**
**Jeffawn Sanders was denied effective assistance of counsel when defense counsel's performance was objectively unreasonable at the sentencing proceeding, which prejudiced Sanders in violation of his rights as guaranteed by the Sixth Amendment, United States Constitution and Section 10 Article 1, Ohio Constitution.**

*First Assignment of Error*

**{¶9}** In his first assignment of error, Sanders argues that his maximum prison term was not supported by competent, credible evidence and that it was contrary to law.

Standard of Review

**{¶10}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Analysis

**{¶11}** " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than [a] minimum sentence[].' " *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, ¶ 26, quoting *State v. King*, 2d Dist. Clark No. 2012-CA-25, 2013-Ohio-2021, ¶ 45; *State v. Freeman*, 3d Dist. Union No. 14-18-16, 2019-Ohio-669, ¶ 11. Nevertheless, when exercising its

sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Kerns*, 3d Dist. Logan No. 8-18-05, 2018-Ohio-3838, ¶ 8, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

**{¶12}** Revised Code 2929.11 provides that sentences for a felony shall be guided by the overriding purposes of felony sentencing: "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). In order to comply with those purposes and principles, R.C. 2929.12 instructs a trial court to consider various factors set forth in the statute relating to the seriousness of the offender's conduct and to the likelihood of the offender's recidivism. R.C. 2929.12(A)-(E).

**{¶13}** In the case *sub judice*, Sanders was convicted of Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. Pursuant to R.C. 2929.14(A)(3)(a), a prison term for a third degree felony violation such as the one in this case "shall be a definite term of twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months." Here, the trial court sentenced Sanders to a sixty month prison term, which was within the appropriate statutory range.

{¶14} Moreover, in fashioning the sentence, the trial court's judgment entry specifically cited R.C. 2929.11 and R.C. 2929.12, indicating that the trial court had considered the record, oral statements, the pre-sentence report, the principles and purposes of sentencing, and that it had balanced the seriousness and recidivism factors. " ' "A trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." ' " *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 32, quoting *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, ¶ 14, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18.

{¶15} Despite the trial court's clear compliance with statutory authority, Sanders contends that a maximum sentence was not warranted in this matter. He first argues that the PSI report included "unprofessional opinions" from the person creating the report. Sanders cites no legal authority supporting his claim that this renders his sentence contrary to law. Regardless, the investigator's opinions are clearly delineated as separate "Investigator's Comment[s]" after various subsections of the report.

{¶16} For example, under the subsection "Education" Sanders decries the investigator's comment that Sanders was capable of completing his PSI questionnaire but he left many areas blank despite possessing an understanding of the questions being asked. Sanders now contends that since he dropped out of high

school there is no indication he actually did understand what was being asked. However, these are merely the investigator's comments and impressions from dealing with Sanders. Nothing establishes that they are factually or legally improper under the circumstances, and Sanders did not challenge any of the investigator's comments to the trial court. *See* R.C. 2951.03(B)(5).

{¶17} Sanders also takes issue with the investigator stating that Sanders was minimizing his conduct when he told the investigator that he was "set up." The investigator also opined that Sanders' statements that he thought he would have a trial even though he'd already pled guilty was a way of coping with the consequences of his actions. Sanders argues that these statements were speculative, particularly given that the investigator was not a therapist. Again, these "comments" were just part of the thoughts/impressions of the investigator, clearly labeled as such, after Sanders gave his "version" of events for the investigator in the PSI. There is no legal or factual authority indicating that the statements of the investigator would somehow render *the trial court's sentence* contrary to law. Thus this argument is not well-taken.

{¶18} Next, Sanders argues that the trial court did not weigh all the appropriate statutory factors in imposing the maximum sentence in this case. However, as we have emphasized in prior opinions, where "the trial court explicitly stated that it had considered the [requisite statutory] factors * * * it *was not required*

*to elaborate upon them* so long as the record indicates that the trial court considered them and the sentences were within the appropriate statutory range." (Emphasis sic) *State v. Dayton,* 3d Dist. Union No. 14-16-05, 2016-Ohio-7178, ¶ 21, citing *State v. Castle,* 2d Dist. Clark No.2016–CA–16, 2016–Ohio–4974, ¶ 30. Here, the trial court did explicitly state that it had considered the requisite statutes in its sentencing entry. The sentence for the crime was also within the statutory range. Thus we need not even proceed further as the sentence is presumptively valid. *State v. Wrasman*, 3d Dist. Logan No. 8-19-36, 2019-Ohio-5299, ¶ 8.

{¶19} Nevertheless, the trial court's sentence was supported by the record and Sanders is unable to demonstrate that it was clearly and convincingly contrary to law. Sanders had a criminal history, his victim was a girl under the age of thirteen who had a clear awareness of what Sanders was attempting to do, and Sanders used his relationship and presence in the house to facilitate the offense. Sanders is also fortunate that the act was stopped before he could complete it or transmit HIV. Therefore his arguments regarding the trial court's consideration of statutory factors is not well-taken.

{¶20} Sanders next contends that his sentence was more severe than other similarly situated offenders, citing numerous appellate cases from this Court in support. Importantly, however, Sanders failed to make this argument at the trial

court and has therefore waived all but plain error. *State v. Summers*, 3d Dist. Mercer No. 10-13-22, 2014-Ohio-4538.

{¶21} Notwithstanding his waiver, it is Sanders' burden to produce evidence that indicates that his sentence is disproportionate to sentences given to other offenders with similar records who have committed these offenses. *Id.* at ¶ 40. To that end, all of the cases cited by Sanders are either factually or legally distinguishable. *See State v. Lucas*, 3d Dist. Auglaize No. 2-03-08, 2003-Ohio-4625 (initially sentencing offender to community control where defendant had sexual contact with nine-year old but later invoking a maximum prison term after community control was violated); *State v. Yoder*, 3d Dist. Union No. 14-18-03, 2018-Ohio-3321 (containing a violation of 2907.05(A)(5) rather than (A)(4)); *State v. Bennett*, 3d Dist. Wyandot No. 16-19-03, 2019-Ohio-4937 (imposing twenty-four month prison term on retired State Highway Patrolman who had no criminal history and had led a law-abiding life); *State v. King*, 3d Dist. Seneca No. 13-19-15, 2019-Ohio-4523, (multiple instances of sexual conduct over a course of several months led to an aggregate prison term of seven years and thirty-six months); *State v. Magallanes*, 3d Dist. Seneca No. 13-18-34, 2019-Ohio-1284 (ordering defendant to serve a maximum prison term for a violation of R.C. 2907.05(A)(4) where defendant digitally penetrated a four-year old's vagina leading to bruising, bleeding and tearing). We would also note that the majority of the cases cited by Sanders come

from different trial courts with different judges. Given that the sentence was within the statutory range, the trial court considered the appropriate statutory factors, and Sanders failed to make this argument to the trial court, we find Sanders' arguments unavailing.

{¶22} Lastly, Sanders argued that he was not required to be sentenced to a "mandatory" maximum term of incarceration. He seems to contend that the trial court imposed a "mandatory" prison term, but there is no indication of that in the record. The imposition of a maximum prison term is not the same as the imposition of a mandatory prison term. Therefore his argument is not well-taken, and his first assignment of error is overruled.

*Second Assignment of Error*

{¶23} In his second assignment of error, Sanders argues that he received ineffective assistance of counsel at the sentencing hearing. He contends that his counsel should have objected when the State made a recommendation at sentencing of a sixty-month prison term, that defense counsel failed to explain some of the contents of the PSI, and that defense counsel failed to emphasize important mitigating factors. He also argues that cumulative errors here prejudiced him.

Standard of Review

{¶24} "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient

performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Analysis

{¶25} Sanders initially claims that his counsel was ineffective for failing to object when the State recommended a maximum, sixty month prison term at the sentencing hearing. Sanders argues that the State had actually specifically agreed *not* to recommend a sixty month prison term as part of the plea agreement and that the State was therefore breaching the plea agreement by making such a recommendation.

{¶26} To support his claim, Sanders points to the written plea agreement wherein the State initially checked a line indicating that it would recommend a prison term and then wrote in a recommendation of sixty months of incarceration. However, the markings on the plea agreement and the sixty month recommendation

were struck through, and initialed by Sanders, his attorney, and the State. At the change of plea hearing, when the State was reciting the plea negotiations, the State indicated that "There is no negotiation on sentencing." (Sept. 16, 2019, Tr. at 4). After the plea agreement was recited, defense counsel and Sanders were asked if that was their understanding of the agreement, and they both responded in the affirmative. This would establish that it was also their understanding that there was no negotiated agreement as to sentencing.

{¶27} Sanders would now have us read the written plea agreement in such a way that when the sixty month recommendation was crossed out on the plea form, the State was indicating it specifically would not recommend sixty months. In other words, the State could recommend any other prison term, or no prison term at all, but sixty months specifically was off the table. This reading is directly contrary to the dialogue at the plea hearing, and a plain reading of the written plea agreement would suggest that crossing out these issues rendered them as though nothing had been written there at all.

{¶28} Next, Sanders argues that his counsel was ineffective for a number of reasons such as for failing to file a sentencing memorandum, failing to explain some issues mentioned in the pre-sentence investigation, and failing to emphasize mitigating circumstances. Some of those mitigating circumstances defense counsel allegedly failed to emphasize include: Sanders' being born with HIV, his mother

never telling him he had HIV while she was alive, Sanders' dad leaving at a young age, Sanders' mother and his grandparents dying when Sanders was thirteen, and Sanders dropping out of high school after tenth grade due to depression.

{¶29} Despite Sanders' arguments, all of these issues, or at least the vast majority of them, were covered in the PSI that was presented to the trial court. Sanders seems to suggest that since defense counsel did not re-emphasize some issues defense counsel was ineffective. We see no factual or legal basis that would support a reversal on that basis, particularly given that defense counsel argued at sentencing over a number of pages in the transcript regarding mitigation, ultimately requesting a sentence of community control or a prison term in the lower end of the applicable statutory range.[2]

{¶30} In fact, defense counsel referenced numerous mitigating factors, broadly referring to Sanders' health, his family background, and his HIV. Defense counsel also referenced Sanders' dialysis treatment, his significant pain, and his hypertension. Defense counsel argued that the victim's family had moved to Georgia, that Sanders had no connection with the family any longer and that he did not intend to contact them.

{¶31} Sanders seems to want a second chance to reargue to the trial court, but we find no error with the original sentencing hearing. There is certainly no

---

[2] Sanders was also given an opportunity to speak in mitigation but he elected not to say anything.

indication that his attorney's performance was deficient *or* that there was somehow resulting prejudice in this matter given everything the trial court had before it to consider at sentencing. Thus his arguments are not well-taken.

{¶32} Finally, as to Sanders' cumulative error argument, we have not found any errors let alone cumulative errors, therefore the doctrine is not applicable here. *State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 104, citing *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110. For all of these reasons, Sanders' second assignment of error is overruled.

*Conclusion*

{¶33} For the foregoing reasons Sanders' assignments of error are overruled and the judgment of the Auglaize County Common Pleas Court is affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**